IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SYLVIA RICHELLE MASK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:05-CV-738-MHT |
| | )   [WO] |
| CHICKERING CLAIMS/AETNA, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to the evidentiary findings and conclusions discussed herein, it is the *Recommendation of the Magistrate Judge* that *Defendant Aetna Life Insurance Company's Motion for Summary Judgment* (Doc. 19, Aug. 1, 2006) be granted.

## I.   PROCEDURAL BACKGROUND

Defendant Chickering Claims/Aetna, properly known as Aetna Life Insurance Company ("Aetna"), timely removed from the Circuit Court of Montgomery County this action filed *pro se* on July 7, 2004, by Sylvia Richelle Mask ("Mask"). Mask contends that Aetna "withh[eld] payments on medical claims on [her] student health insurance" at Huntingdon College in Montgomery, and the Complaint specifies two claims: (a) Chickering Claim 033195986-A BAT, Date of Service 10/16/00 - Date of payment 07/31/2003, and (b) Chickering Claim 03353358-A BAT, Date of Service 11-14-00 - Date of Payment 1-27-04.

"Due to the negligence of defendant", Mask averred, "the plaintiff's wages have been garnished and this has caused the plaintiff to accrue many outstanding debts." (*Compl.*, Doc. 1-2) Though the Complaint demanded only a $15,000.00 Judgment, Aetna established the requisite

jurisdictional amount through an itemization of damages demanded by Mask in correspondence to Aetna. (Doc. 1-1).

In deference to the plaintiff's unrepresented, non-lawyer status, and due to reported difficulties in securing her input on a joint discovery plan, the Magistrate Judge convened a hearing attended by Mask and defense counsel on January 19, 2006. The court "reviewed extensively and primarily for the benefit of the *pro se* plaintiff matters of relevance to pre-trial discovery in this action, including specifically the requirements of FED. R. CIV. P. 26(f) and M.D. Ala. LR 26.2(b) and the initial disclosures required by Rule 26(a)(1)." (Doc. 11) Pursuant to the plaintiff's testimony of her diligent but futile efforts to secure legal representation for a significant period before and after filing this action, the court deemed it imprudent to protract the litigation further for that purpose. Nonetheless, the court instructed the parties on the availability of court-assisted mediation at no cost, urged their favorable consideration, and imposed a reasonable stay of depositions and other costly discovery – until February 28, 2006 – to encourage them "to focus. . . on a good-faith attempt to resolve this dispute by settlement or mediation."

Upon notice of the parties' impasse, the court proceeded to set deadlines for completion of discovery and dispositive motions (Doc. 15). On August 1, 2006, Aetna filed its summary judgment motion with a supporting brief, exhibits, and other evidentiary materials. (Docs. 19, 20). On August 24, 2006, the *pro se* Plaintiff responded with two submissions: (1) *Plaintiff's Response to Defendant Aetna Life Insurance Company's Brief in Support of Its Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment* (Doc. 22), and (2) *Plaintiff Sylvia Richelle Mask's Answer to Defendant's Motion for Summary Judgment* (Doc. 23). For the good cause explained in its Order entered August 29, 2006 (Doc. 24), the court advised Plaintiff that both submissions would be considered only as her

response in opposition to Defendant's summary judgment motion. Additionally, the court instructed as follows: "The Magistrate Judge's Recommendation on this summary judgment motion will include a Recommendation that *Plaintiff's Motion for Summary Judgment* – to the extent that Doc. 22 and Doc. 23 purport to state such a Motion – be **DENIED as untimely** and otherwise non-compliant with Rule 56." In addition to the summary judgment submissions and Plaintiff's opposition responses, the court has considered Defendant's *Reply* (Doc. 25, Sept. 5, 2006).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56 (c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of" of the pleadings and evidentiary record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A properly supported motion for summary judgment "requires the non-moving party to go beyond the pleadings and by. . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions of file', "designate 'specific facts showing that there is a genuine issue for trial'." *Id.*; *See* Fed.R.Civ.P. 56(e) and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (explaining the evidentiary rebuttal required for issues on which the non-moving party would bear the burden of proof at trial).

The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). In doing so, the court must accept the evidence of the non-moving party as true, resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. *See Hunt v. Cromartie,* 526 U.S. 541, 550-55 (1999).

### III.  EVIDENTIARY FACTS

The relevant documentary evidence is undisputed and provides the basis for this summary of evidentiary facts.[1] Chickering Claims Administrators, Inc. ("Chickering"), an affiliate of Aetna, provided claims administrative services for the Blanket Student Accident and Sickness Insurance Policy issued by Aetna to Huntingdon College ("Huntingdon"), effective August 20, 2000 (the "Policy"). Mask's status as a Huntingdon student qualified her for covered benefits.

Both disputed claims arose from medically supervised "sleep disorder" studies conducted on Mask at Jackson Hospital on October 6, 2000, and again on November 15, 2000, for which the hospital submitted claims in the respective amount of $5,567.00 (on November 14, 2000), and $2,993.00 (on December 18, 2000). In order to evaluate the applicability of policy exclusions for preexisting conditions, Chickering initiated an investigation which resulted in its denial of both claims and provided notice to Mask on the same dates: December 13, 2000, for denial of the $2,993

---

[1] Both parties filed an Appendix which includes these same exhibits: *Blanket Student Accident and Sickness Policy for the Huntingdon College Plan* (Def.'s Ex 1-A; Pl.'s Ex. A); *Huntingdon College Plan brochure* (Def.'s Ex. 1-B; Pl.'s Ex. B); Claims file materials relating to the medical claims at issue (Def.'s Ex. 1-C, Pl.'s Ex. C). Aetna submitted additionally Ex.1-D (Medical Claims submitted for the medical treatment at issue; Ex. 1-E (Medical claims denial notices issued to Mask on December 13, 2000, and January 9, 2001); Ex. 1-F (Explanation of Payment); and the Affidavit of Jonathan Galloway, a Customer Service Manager for Chickering, who also certified the business records submitted. (Ex. 1). Mask also presented her "file materials relating to case" as Ex. D.

claim, and January 9, 2001, for denial of the $5,567 claim. [2]

Notwithstanding the lack of coverage for these claims, on July 31, 2003, Chickering paid $4,453.80, equivalent to 80% of the $5,567.00 claim, and on January 27, 2004, paid $1,915.52, the 80% equivalent of the $2,993.00 claim. Chickering's records suggested that "these payments appear to have been made as the result of a misunderstanding of the evidence of creditable coverage by a claims examiner at Chickering." (Galloway *aff.*, ¶ 11). Mask does not dispute the fact of these payments.[3]

## IV.  DISCUSSION

Given Aetna's payment (albeit reportedly erroneous) of the disputed health insurance claims, the court is left to decide only whether disputed fact issues preclude summary judgment for Aetna on any remaining "breach of contract" or "negligence" claims which can be reasonably interpreted from the complaint. Notwithstanding the bare-boned allegations of her complaint with its casual references to "breach of contract" and "negligence", Mask maintains that she "alleges breach of contract by Chickering Claims/Aetna (expressed and implied), promissory estoppel, unjust

---

[2] *See* Def.'s *Exs*. 1-C, 1-E, and 1 (Galloway *aff.*). Galloway explained as follows the basis for Aetna's decision:
> According to Chickering's records, in response to a questionnaire dated November 17, 2000, Dr. Jimmy Durden reported that the sleep disorder symptoms for which Ms. Mask was being treated in October of 2000 first appeared in approximately May 2000. Dr. Duren also reported that Ms. Mask first consulted him about these symptoms on May 31, 2000 and that he subsequenetly treated her on July 20, 2000, prior to the effective date of the Policy. See Exhibit C.  Dr. Durden's office visit note of September 13, 2000, also stated that Ms. Mask had a "four year history of excessive daytime hypersomnolence, falling asleep easily whenever she is not active, and complaining of some 'attacks' of sleepiness which are brief but do result in an overwhelming sense of wanting to lie down and sleep." See Exhibit C.

(Galloway *aff.*, ¶ 8)

[3] See Pl.'s Resp. At 4, Ex. C. at A00089 and A 00090.

enrichment, misrepresentation, and concealment." (*Pl.'s Resp.*, Doc. 23, at 1). The complaint patently demonstrates otherwise.

Mask has failed utterly to offer any evidence in support of her contract claims. In response to Aetna's well-documented submission for summary judgment, she cannot rest on repetition of conclusory allegations of wrong-doing and self-serving arguments. Instead, Rule 56 obligates her to identity any specific facts – supported by evidence, affidavits, depositions, interrogatories, sworn or certified copies of documents – which illustrate the presence of a genuine issue requiring trial. After reviewing all the summary judgment submissions, the court must decide if they present any genuine factual issue for resolution by a "finder of fact because they can reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

As support for the contract claim pled in the complaint, Mask rests solely on the fact of her "creditable insurance coverage" with another group insurer, Blue Cross/Blue Shield and argues that such proof – submitted to Aetna on February 16, 2001, and May 7, 2001 – "prov[es] that [she] did not have a preexisting condition as defined under HIPAA laws [because] HIPAA law 'requires health plans to reduce the preexisting condition exclusion period by any periods of creditable coverage that the individual proves he or she had, and a group health plan or health insurance issuer must determine within a reasonable period of time the length of the exclusion period for preexisting conditions based on a review of certificates of creditable coverage for the individual." (*Pl.'s Resp.* at 3, referencing Pl.'s Ex. C at A00060 and A00096, HIPAA ¶200).

Mask's reliance on the referenced HIPAA regulation is misplaced[4], and she does not address

---

[4] The regulation applies to employer group plans rather than to group plans for college students. *See* Def.'s
(continued...)

6

at all Aetna's showing that "Huntingdon did not offer student insurance through Blue Cross/Blue Shield prior to August 20, 2000." (Galloway *aff.* ¶ 10).[5] Her submission fails to trigger any genuine issue of material fact on the substantive elements necessary to establish her breach of contract claim: a valid contract; performance or tendered performance by plaintiff; non-performance by defendant; damages to plaintiff as a result of defendant's breach. *See Southern Med. Health Sys. Inc v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995). Even if the court construed from her "pre-existing condition" submissions a genuine dispute about Aetna's non-performance under the contract, nothing produced in opposition to Aetna's motion evidences any further monetary obligations owed by Aetna to her under the insurance contract. Its ultimate payment of the claims – notwithstanding the reported error – completed its contractual obligations and highlights plaintiff's inability to establish each required element of her contract claim. *See Stead v. Blue Cross-Blue Shield of Ala.*, 346 So. 2d 1140, 1142-43 (Ala. 1977); *Mann v. Bank of Tallahassee*, 694 So. 2d 1375, 1380-91 (Ala. Civ. App. 1996).[6]

To the extent that the complaint is construed liberally, solely in deference to her *pro se* status, to allege negligence arising from Aetna's delayed payment, such a claim is barred by the applicable

---

[4](...continued)
*Reply* at 4, n10; 29 U.S.C. §§1167, 1181; *Def.'s Ex.*1-A at A00023.

[5]Under Huntingdon's policy, the only exception to the "pre-existing condition" exclusion is proof that the eligible student has been "continuously insured." *See Def.'s Ex.*1-A and *Pl.'s Ex.* A at A00033. "Continuously insured" means that the eligible student was "insured under prior Student Health Insurance policies issued to the school" without a break in coverage. *See Def.'s Ex.* 1-A and *Pl.'s Ex.* A at A00033; *Def.'s Reply* at 5-6.

[6]Alabama law does not allow for damages in addition to the medical benefits payable under the claim. *See Vincent v. Blue Cross-Blue Shield of Ala.,Inc.*, 373 So. 2d 1054, 1056 (Ala. 1979) ("It is settled that the law in this state does not permit recovery for personal injury, inconvenience, annoyance or mental anguish and sufering in an action for breach of a contract of insurance.") *(citation omitted)*. Nor does the group policy issued to Huntington allow covered students to recover for health-related losses any damages in addition to the specified rates of payment to medical providers for the medical care furnished.

statute of limitations. ALA. CODE 6-2-38 (1975 & Supp. 2005).[7] Two material, undisputed facts evidenced on this record doom this negligence theory: first, the disputed claims were excluded from policy coverage,[8] and second, Aetna denied coverage on the claims on December 13, 2000, and on January 9, 2001. The two-year statute of limitations for any negligence claim began running from these dates and expired before Mask filed this lawsuit on July 7, 2004.[9] The court declines to rewrite the deficient complaint to state any of the tort claims now alleged, all of which would be barred as well by the statute of limitations.

## V.  CONCLUSION

Pursuant to the findings and conclusions stated, it is the *Recommendation of the Magistrate Judge* that:

1. Defendant's *Motion for Summary Judgment* (Doc. 19) be **GRANTED**;

2. the *Motion for Summary Judgment* submitted by Plaintiff with her Response in opposition to Defendant's Motion (Docs. 22 and 23), to the extent it purports to state such a Motion, be

---

[7]Notwithstanding a liberal construction of the complaint, Mask's summary judgment submissions amply demonstrate her inability to establish the essential elements of negligence under Alabama law. Mask's negligence claim rests on Aetna's delay in making a payment it had no contractual duty to pay. She presents no credible evidentiary showing that Aetna unreasonably investigated and processed her claim.

[8]*See Def.'s Exs*. 1-A and *Pl.'s Ex. A* at A00028;  *Def's. Ex.* 1-B and *Pl.'s Ex. B* at A00007, A00015.

[9]Mask's theory of "continuous negligent acts" (*Pl.'s Resp*. at 4) reflects her misapprehension of the prevailing Alabama law. "A negligence cause of action accrues as soon as the plaintiff is entitled to maintain the action, i.e., at the time of the first legal injury, regardles of whether the full amount of damages is apparent." *Long v. Jefferson County*, 623 So.2d 1130, 1127 (Ala. 1993); *see also Alfa Mut. Ins. Co.* v. Smith, 540 So. 2d 691, 693 (Ala. 1988) (holding that a cause of action in connection with the refusal to honor insurance benefits accrues when the party seeking to bring the action knew of facts which would put a reasonable mind on notice of the possible existence of a tort claim.) (emphasis in the original).

DENIED as untimely and otherwise non-compliant with Rule 56.

3. Final Judgment be entered against the named Plaintiff, Sylvia Richelle Mask, and in favor of Defendant Chickering Claims/Aetna, properly known as Aetna Life Insurance Company.

It is further **ORDERED** *that the parties shall file any objections to the said Recommendation not later than December 20, 2006.* Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 7th day of December, 2006.

                                            **/s/ Delores R. Boyd**
                                            DELORES R. BOYD
                                            UNITED STATES MAGISTRATE JUDGE